**FILED**

AUG 17 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, VENUS JACKSON, do hereby certify that I have served a true and correct copy of the following document,

**MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM**

upon the court and the office of the United States Attorney:

**Joseph A. Stewart**
United States Attorney's Office
NDIL – Chicago
219 South Dearborn Street
Chicago, IL 60604

**Thomas G. Bruton**
Clerk of the US District Court
Everett McKinley Dirksen Courthouse
219 South Dearborn Street
Chicago, IL 60604

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the __11__ day of __Aug__, 2017.

_____
VENUS JACKSON
*Pro Se* Movant

# MENTAL HEALTH DISCHARGE SUMMARY

NAME (Offender): **VENUS JACKSON**

AGENCY: HOUSTON GALLERIA PSYCHOLOGY CONSULTANTS/DR HUGHES

DATE: MAY 2017

1. DSM IV DIAGNOSIS: 300.01 Panic Disorder w/o Agoraphobia, 301.81 Narcissistic PD

2. REASONS FOR TERMINATION (CHECK ONE):

   ☑ SUCCESSFUL DISCHARGE

   ☐ UNSUCCESSFUL DISCHARGE

   ☐ INTERRUPTION OF TREATMENT

VENDOR COMMENTS

EXPLAIN (USE ADDITIONAL PAGES IF NEEDED):

The client made a planned move to AZ with her husband and son & will finish her probation there. Her husband has a job opportunity there and she will be near her sister in-law and her adult nephew. She had no family in Houston and one than of her sisters in Chicago were involved in her case.

The client attended treatment with Dr. Hughes during Pre-Trial from 02/02/2011 - 03/08/2013 and on Probation from 08/01/2016 - 05/10/2017. During her time in treatment, the client made significant progress on understanding her motives and taking responsibility for her crime. In addition, she developed insights into her personality and gained better coping skills as well as anxiety-reduction tools.

3. RECOMMENDATIONS FOR COMMUNITY BASED AFTERCARE:

At this time, the client will be successfully terminated from treatment. She may benefit from return to therapy in the future, should high stress or reversals occur. She is a client who made very positive and adaptive use of her time in treatment.

_____  Dr. Donna G. Hughes    05/19/2017
Signature of Counselor                              Date

Revised: 6/20/12

# Certificate of Completion

THIS ACKNOWLEDGES THAT

## Venus Jackson

HAS COMPLETED THE NURSE AIDE TRAINING AND COMPETENCY EVALUATION PROGRAM AT CYPRESSWOOD HEALTH AND REHABILITATION CENTER, HOUSTON, TEXAS ON MARCH 30, 2017.

*Kathy Lovett Irvine, RN*
KATHY LOVETT IRVINE, RN PROGRAM DIRECTOR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VENUS JACKSON,<br><br>Defendant. | Case No. 1:10-CR-0737-2<br>*Hon. Judge Joan H. Lefkow* |

## MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE

NOW COMES the Defendant VENUS JACKSON, appearing *pro se*, and respectfully motions the Court to terminate the imposed term of supervised release pursuant to 18 U.S.C. §3583(e)(1) and Fed R. Crim. P. 32.1(c)(2)(C). No hearing is sought in this matter per Fed R. Crim. P. 32.1(c)(2)(B).

Argument Summary: Section 3583(e) allows Article III judges to terminate a term of supervised release if it is in the interest of justice and warranted by the defendant's conduct. This petition deserves to be granted because:

- The goals of supervision have been reached, the need for further supervision is no longer needed and the interests of justice are served by granting this request;
- I meet all eight criteria from §3553(a) that are pertinent to this type of request;
- I meet all nine policy criteria for a probationary recommendation from Monograph 109;
- I am at zero risk to re-offend for the remainder of my life; and,
- Similar defendants from this circuit, with similar cases, have had their petitions for early termination granted.

## Case History

1. This Court sentenced me on November 22, 2013 to a term of 30 months of imprisonment followed by 3 years of supervised release. (CR 192).[1] This sentence came after I pleaded guilty to one count of Wire Fraud.[2]

2. The offense conduct involved was in November of 2005, but the indictment document was not filed until September 2010, which is just before the statute of limitations for Wire Fraud.[3] Beyond this, I spent three years on pretrial release with no hiccups or infractions (violations) giving my time since offense conduct at 12 years, and my full time on supervision and incarceration at 7 years already served without incident.

3. My supervision began on April 11, 2016.

## Statutory Authority, Circuit Precedent, and Policy Overview

4. 18 U.S.C. § 3583(e)(1) states that, after considering several factors expressed in 18 U.S.C. § 3553(a),[4] the Court may terminate a term of supervised release and discharge the defendant after serving one year of supervision if it is warranted by the conduct of the defendant and it is in the "interest of justice".[5]

5. Of the nine factors in §3553 that are considered at original sentencing hearings, only eight are present here. The only factor at sentencing that is missing from consideration of an early termination of supervised release request is §§(a)(2)(A): "the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;".

6. It follows from this that supervised release is not punishment, and an early termination request doesn't ponder the seriousness of the originating offense, but rather asks the

---

1 "CR" followed by a number references the PACER docket entry of this Court's record.
2 In violation of Title 18 U.S.C.§1343.
3 18 U.S.C. §3193.
4 Specifically, the Court is to consider (a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).
5 Title 18 U.S.C.A. §3583(e)(1).

Court to determine if further supervision is needed to accomplish the goals of supervision. The interests of justice can be served, in my case, by early termination.

7. The purposes of supervised release have been variously described as rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism. *See United States v. Johnson,* 529 U.S. 53, 59-60 (2000); *United States v. Siegel,* 753 F.3d 705-708 (7th Cir. 2014); *United States v. Evans,* 727 F.3d 730, 733 (7th Cir. 2013).

8. Supervised release was not intended to be imposed for the purposes of punishment or incapacitation, "since those purposes will have been served to the extent necessary by the term of imprisonment." S. Rep. No. 98-225, at 125. "The Supreme Court has described supervised release as "the decompression stage" between prison and full release. *Johnson v. United States,* 529 U.S. 694, 709 (2000).

9. "Prisoners may, of course, vary in the degree of help needed for successful reintegration. Supervised release departed from the parole system it replaced by giving district courts the freedom to provide post-release supervision for those, and only those, who needed. Congress aimed, then, to use the district courts' discretionary judgment to allocate supervision to those releases who needed it most." *id."* *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015).

10. A court may terminate supervised release early even if the statute of conviction originally required a particular term of supervised release. See, e.g., *United States v. Spinelle,* 41 F.3d 1056, 1069 (6th Cir. 1994); *United States v. Gainer,* 936 F.Supp. 785, 786 (D. Kan. 1996); *United States v. Scott,* 362 F.Supp.2d 982, 984 (N.D. Ill. 2005); *United States v. McClister,* 2008 WL 153771, *2 (D.Utah 2008).

11. Policy on early termination on supervised release can be found both in Monograph 109 for probationary policy,[6] and in the Sentencing Guidelines Manual in §5D1.2.

---

6 *Supervision of Federal Offenders,* (Guide to Judiciary Policy, Vol. 8E, Ch. 3 at 28-29)

Fundamental to this pleading, the Commission changed this section of the Manual in 2011 to specifically encourage courts to consider early termination of supervised release in "appropriate cases." It is noteworthy that this policy shift in the Guidelines Manual nullifies the oft-used "exceptional conduct" and "changed circumstances" standard set by the *Lussier* Court 20 years ago. See *U.S. v. Lussier*, 104 F.3d 32 (2nd Cir 1997).

12. My conduct since release personifies change, cooperation, and absolute compliance. All of the factors this Court must consider under §3553(a) when deciding to terminate a term of supervised release early, in addition to those it may consider, *id.*, weigh in favor of early termination in my case. These factors are discussed below.

## Discussion of 18 U.S.C. §3553 Factors

13. I have now served three years on pre-trial release and 16 months on supervised release. I have paid my $100 special assessment in full and I was no fine was levied. I was, however, given a judgment of restitution in the amount of $2,105,475.[7] I have paid my requisite monthly payment toward my restitution, fulfilling probation's requirements thereto faithfully, and without fail. However, it is mathematically impossible for me, given my low income to pay off the remaining balance of my restitution before I am naturally released from supervision.

14. Regardless of whether this court grants my request for early termination or not, my case will end up a civil financial action which, unless my income changes, I will pay toward faithfully for many years past when my supervision will naturally expire, and therefore my outstanding restitution balance should not weigh against this request.

15. I have no needs, educational, medical, or otherwise which could be facilitated from further supervision.[8] Since my release, I have received no infractions or violations of supervision and have complied with every condition thereof. I have cooperated fully from day one with the Bureau of Prisons and the USPO.

---

7  This compliance lends itself to satisfying §3553(a)(7).
8  Satisfying §3553(a)(2)(d).

16. Additionally, I pose a very low likelihood to commit future crimes. Data accumulated from other federal criminal cases indicates that I pose a very low risk of recidivism. First, due to my initial criminal-history points, I have a low likelihood of recidivism.

17. Beyond criminal history categories, criminal-history points themselves are an excellent indicator of the risk of recidivism and re-arrest. A 2017 study published by the Sentencing Commission concludes, specifically, offenders with zero criminal history points and no prior contact with the criminal justice system, "there is an 11.7 percentage point difference [lower] in rearrest rates..." compared to a zero-point offender with prior contact with criminal justice Zero-point offenders show a much lower re-conviction rate (17.4%), almost 4x less likely than an offender with 15+ points (66.2%)[9] I was sentenced with zero Criminal History Points and a Criminal History Category of I, placing me in the category of offenders who have the lowest risk of recidivism.

18. Second, the effect of early termination, as requested in this motion, reduces my likelihood to recidivate. A recent recidivism study by the AOUSC-OPPS examined a cohort of offenders whose supervision terms expired or were terminated early in fiscal year 2005. The study found that during the 36-month follow-up period, "offenders granted early termination do not pose a greater safety risk to the community" than offenders who successfully served the entire supervised release term imposed by the sentencing court. "In fact, early-term offenders in this study presented a lower risk of recidivism than their full-term counterparts. Not only were early-term offenders charged with a new criminal offense at a lower rate than full-term offenders, they were charged with proportionally fewer felonies…"[10] [11]

---

9 *The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders* ; United States Sentencing Commission, 2017, available at [http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170309_Recidivism-CH.pdf]
10 See James L. Johnson, *Are Early Terminated Offenders a Greater Risk to the Community? NEWS AND VIEWS, Vol. XXXV, No. 2, at 1 (Jan 18, 2010).* Published by AOUSC-OPPS
11 Paragraphs 16-18 satisfy §3553(a)(2)(B)-(D). It's of note that §3583(e)(1) does not set forth §3553(a)(2)(A) as a factor to be considered in requests such as this, as Supervised Release is not considered a part of the "punishment" for my criminal behavior, but for affording adequate protection from the public from me, which is no longer relevant.

19. In addition to the Sentencing Commission's Guidelines Manual amendments from 2011, *supra*, in November of 2015 the Sentencing Commission Amended §2B1.1, showing a policy shift in how the U.S.S.C. views guidelines sentencing in Fraud cases, financial loss calculation and attribution.[12] From the Sentencing Commissions Press release regarding the amendment:

> *[T]he amendment revises the commentary at §2B1.1, Application Note 3(A)(ii), which has defined intended loss as "pecuniary harm that was intended to result from the offense." In interpreting this provision, courts have expressed some disagreement as to whether a subjective or an objective inquiry is required. Compare United States v. Manatau, 647 F.3d 1048 (10th Cir. 2011) (holding that a subjective inquiry is required), United States v. Diallo, 710 F.3d 147, 151 (3d Cir. 2013) ("To make this determination, we look to the defendant's subjective expectation, not to the risk of loss to which he may have exposed his victims."), United States v. Confredo, 528 F.3d 143, 152 (2d Cir. 2008) (remanding for consideration of whether defendant had "proven a subjective intent to cause a loss of less than the aggregate amount" of fraudulent loans), and United States v. Sanders, 343 F.3d 511, 527 (5th Cir. 2003) ("our case law requires the government prove by a preponderance of the evidence that the defendant had the subjective intent to cause the loss that is used to calculate his offense level"), with United States v. Innarelli, 524 F.3d 286, 291 (1st Cir. 2008) ("we focus our loss inquiry for purposes of determining a defendant's offense level on the objectively reasonable expectation of a person in his position at the time he perpetrated the fraud, not on his subjective intentions or hopes") and United States v. Lane, 323 F.3d 568, 590 (7th Cir. 2003) ("The determination of intended loss under the Sentencing Guidelines therefore focuses on the conduct of the defendant and the objective financial risk to victims caused by that conduct").*
>
> *The amendment adopts the approach taken by the Tenth Circuit by revising the commentary in Application Note 3(1)(ii) to provide that intended loss means the pecuniary harm that "the defendant purposely sought to inflict." The amendment reflects the Commission's continued belief that intended loss is an important factor in economic crime offenses but also recognizes that sentencing enhancements predicated on intended loss, rather than losses that have actually accrued, should focus more specifically on the*

---

[12] This lends to §3553(a)(4) and (a)(5)

*defendant's culpability.*[13] [14]

20. I ask for and expect no sympathy from this Court for the punishment I received for my actions. I simply point to the years I have now paid for my crime with, and ask the court to grant me the ability to move on from supervision.

## Discussion of Relevant Policy Considerations

21. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they "**should consider the suitability of early termination for offenders as soon as they are statutorily eligible.**"

22. When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b):

    *(1) Stable community reintegration;*
    *(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;*
    *(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;*
    *(4) No history of violence;*
    *(5) No recent arrests or convictions;*
    *(6) No recent evidence of alcohol or drug abuse;*
    *(7) No recent psychiatric episodes;*
    *(8) No identifiable risk to the safety of any identifiable victim; and,*
    *(9) No identifiable risk to public safety based on the Risk Prediction Index."*

23. Later in that same section it states that the existence of outstanding financial obligations *per se* does not adversely affect early termination eligibility (§§c), failure to meet criteria listed should not automatically exclude an offender from further consideration (§§d), and there is <u>a presumption in favor of recommending early termination</u> for probationers and supervised releasees who have been supervised for at least 18 months and are not violent, drug, sex offenders, terrorists, present a risk to public or victims, and are free from any moderate or higher violations. As I approach this 18-month point, I felt it applicable to make this application heading into the fall.

---

13 From the United States Sentencing Commissions "'Reader-Friendly' Version of Amendments Submitted to Congress April 30, 2015 (effective November 1, 2015)" available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/20150430_Amendments_0.pdf

14 This policy speaks to satisfying §3553(a)(4) and (a)(5)

24. I have a very strong support structure which encourages my law-abiding life. My husband of 5 years supports me fully each day. My son started kindergarten just this week, which is hard for a mother to endure. He is the light of my life and a constant reminder of why I live my life within the law, away from incarceration. My support system extends past immediate family and into my church and son's school. My husband and I have found a church family in Arizona at the Mount Moriah church, which is also attended by the Principal at my son's new elementary school. I have a set of sisters who keep tabs on me regularly and represent a large section of my support network.

25. I am gainfully employed by Computer Share as a claims processor making steady and reliable income. Beyond my current job, however, I have been actively pursuing an education in health care to begin a career as a nurse. I am now credentialed as a Certified Nurses Assistant and am going to enroll soon in one of two courses available to me as fast-track programs to a Licensed Practicing Nurse (LPN). These are considered two-year degrees, but the programs run anywhere from 12-15 months.[15]

26. I have not been arrested or committed any violations of supervision since release. Nor have I had any psychiatric episodes. I have completed mental health counseling during my time on supervision, and have benefited from that counseling a lot.[16] Not only did this help me personally, it helped address problems that I had and aided in their identification and resolution. Participation in treatment programs like this, as well as completing them, places me squarely in the category of offender specifically pointed to by the sentencing commission for early release from supervision in §5D1.2, *supra.*

27. I do not have an aggravated offense, or an aggravated role in the instant offense. I do not have a history of violence. I have no psychiatric episodes in my past at all, certainly none while on supervision.[17]

---

15 Residence, family, and employment are the detailed examples that speak to criterion (1): stable community Integration.
16 Lack of arrests or violations of supervisory conditions satisfy criteria (2) and (5), respectively. Participation in treatment programs with no errant drug tests satisfies criteria U.S.S.G. §5D1.2 (n. 5) and criterion (6).
17 Criteria (3), (4) and (7), respectively. Regarding a history of violence, policy specifically points out domestic and

28. I have no victims whose safety would be at risk were my supervision to be terminated early. And, finally, my risk of recidivism is statistically as low as any federal offender, see ¶16-18.[18]

29. Finally, other cases from Illinois and around the country where defendants have had their supervision terminated early speak directly to my case and to §3553(a)(6). In *United States v. DiPasquale* (VAED, 1:12-CR-0443-1) and *United States v. Abbate* (TNMD, 3:16-CR-0201-1), both defendants were incarcerated for fraud offenses and were released with just over half of their terms of supervision remaining. Both defendant Abbate and DiPasquale had much higher restitution judgments than I do at $6MM and $3MM respectively, and both still owed much of those judgments at the time of their release. More pertinent to this court, in *United States v. Walker* (ILSD, 3:07-CR-30119-MJR-1), defendant Walker was released from his supervision 4 full years before it's natural expiration. In that case, Judge Reagan from the East Saint Louis courthouse granted early release in a case much more strictly monitored than fraud supervision cases.

---

sexually predatory behavior, none of which are present in my case, nor ever will be.
18 Satisfying criteria (8) and (9).

## CONCLUSION

Considering the cost of supervision, and based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on this \_\_11\_\_ day of \_\_Aug\_\_, 2017.

/s/ _____
VENUS JACKSON
*Pro Se* Defendant, Movant

Attachment List:

- Letter: Completion of Mental Health Counseling Program
- Certificate: Certified Nurse's Assistant